IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

CRYSTAL HALL )
)
        PLAINTIFF, )   CIVIL ACTION NO.
)
  vs. )
)   HON.
PFIZER, INC.          , )
)
        DEFENDANT. )
_____)

## COMPLAINT

PLAINTIFF, Crystal Hall, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against Pfizer, Inc.

## JURY DEMAND

COMES NOW PLAINTIFF, and hereby makes her demand for trial by jury.

## JURISDICTION

1.     At all times relevant to this complaint, PLAINTIFF CRYSTAL HALL was a resident of Calhoun, County in the State of Michigan.

2.     Pfizer is a domestic nonprofit corporation, which has a place of business in Portage, Michigan.

3.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et

1

seq.

4.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5.     Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.     Plaintiff, Ms. Hall is an African American woman above the age of 40.

7.     Ms. Hall began working for Defendant around June of 2020 as a Contracted Temporary Sprayer for Manpower.

8.     Ms. Hall's original position in Aseptic Services involved spraying the entirety of Building 41 and production related to COVID.

9.     During this time, Ms. Hall also worked in APN, APS and Grade A-D areas.

10.    Further, Ms. Hall possessed certifications to dispose of hazardous waste in Warehouse 41 South.

11.     During the course of her employment, Ms. Hall moved into a Logistics Operator in Warehouse 41 South for the fast-track COVID line.

12.     Upon information and belief, the responsibilities of a Logistics Operator did not include sanitation or "spraying" for COVID.

13.     Beginning in November of 2020, Defendant began to assign Ms. Hall spraying responsibilities despite her being moved to a Logistics Operator Position.

14.     Ms. Hall personally went to Manpower, as well as Michael Pica Terry Davis and Russel Paige, to complain about being forced to spray for COVID, which was not in the job description for a Logistics Operator.

15.     Upon information and belief, other younger and/or non-African American Logistics Operators did not have to spray for COVID during this time.

16.     Further, Ms. Hall was not being allowed to train on the COVID line, despite younger/non-African American employees being allowed to do so.

17.     Upon information and belief, these other employees were eventually hired permanently by Defendant.

18.     This differential treatment continued throughout November of 2020 with Plaintiff again complained to her supervisors in Defendant's building 41 on or about December 11, 2020.

19.     Upon information and belief, Ms. Hall also emailed her Pfizer logistics manager the same day about being discriminated against.

3

20.     Upon information and belief, Ms. Hall was terminated the same day after making these complaints.

21.     No information was ever provided to the Plaintiff about the reason or basis for her unemployment.

22.     On or about December 15, 2020, Ms. Hall filed for unemployment against Manpower as they accused her of misconduct.

23.     Upon information and belief, a hearing was set in regards to the unemployment based upon misconduct claims from Manpower about misuse of a company card.

24.     Ultimately, an Unemployment Determination letter awarded Ms. Hall unemployment because

   a. no one talked to her about her termination reasons or misconduct/performance issues; and

   b. Manpower sent no evidence to evidence any misconduct/performance issues; and

   c. Manpower accused Plaintiff of purchasing PPE for her salon, but Ms. Hall was able to provide information evidencing this was not the case.

25.     Upon information and belief, Ms. Hall did not have any disciplines in her file nor any attendance issues.

26.     Shortly after her termination, Ms. Hall tried several times to secure a position with Defendant.

27.     The first attempt was in January of 2021 involving Al Slobodzian, a \
hiring recruiter.

28.     Upon information and belief, Ms. Hall was informed she was selected
for the position and told to watch her emails for background check, drug screen
and offer from HR.

29.     Upon information and belief, Ms. Hall never received an offer letter
or other information about this position.

30.     Next, Ms. Hall went to a job fair to apply for the Lakeview Mall
Packaging Position with a referral from then Pfizer employee Eugene Roberts.

31.     Once again, Ms. Hall was informed she was selected for the position
and told to watch her emails for background check, drug screen and offer from HR.

32.     Ms. Hall's boss at Stryker, Jen Morgan, even wrote a job referral
letter on her behalf after Ms. Hall quit Stryker for a position with Defendant.

33.     Upon information and belief, Defendant's lead over orientation of
new hires, Stephanie Finch, went to Manpower on Ms. Hall's behalf as well as
acted as her employee referral.

34.     Upon information and belief, Stephanie Finch had reached out to both
Julie McWilliams and Lisa Currier about Plaintiff's applications.

35.     On or about September 26, 2022 , during the open interview process
at the Radisson Ms. Hall was moved forward in the job interview process.

36.     However, Ms. Hall never received any information about a drug screening and/or background check.

37.     In January 2023, Ms. Hall received an email from Defendant's Talent Accusition Pfizer Global Supply PGS encouraging me to apply for job Pfizer.com

38.     Upon information and belief, Manpower Lansing contacted and interviewed Ms. Hall for Chemical Operator Position with the Defendant.

39.     After being told once again that Ms. Hall was a prime candidate for the position, she was informed that she was "not eligible" to be hired by Defendant.

40.     Upon information and belief, no other information was offered to Ms. Hall.

41.     Ms. Hall continued to apply to positions she was qualified for, some of which were in the Warehouse 41 area she had previously excelled in.

42.     Two such positions were in Aseptic Services, which was her first position as a contractor.

43.     Upon information and belief, Ms. Hall received four recommendations from different departments to be hired permanently while working as a temporary worker.

44.     Upon information and belief, Defendant placed Ms. Hall on a do not rehire list based upon false, unfounded accusations of misappropriation of funds.

6

45. Upon information and belief, Ms. Hall has asked repeatedly for her employee file, but never received any portion of her file.

46. Plaintiff received a Right to Sue Letter on October 27, 2023 for Charge No: 471-2023-06317.

47. Plaintiff requests remuneration for the following claims set forth herein.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

48. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

49. 42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

50. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

51. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African-American, to the creation,

7

performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

52.   Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful racial discrimination.

53.   The retaliation by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

54.   The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

55.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

56.   But for Defendant's unlawful discrimination against Plaintiff for opposing gender discrimination, Plaintiff would not have suffered damages as set forth herein including her termination.

57.   As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their

future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II

## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

58.  Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

59.  42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

60.  Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

61.  By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

62.     The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

63.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

64.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

65.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## **COUNT III**

## **RETALIATION IN VIOLATION OF TITLE VII**

66.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

67.     At all material times, Defendant was an employer and Plaintiff was an

employee covered by, and within the meaning of, Title VII, as amended.

68.     A  respondeat  superior  relationship  existed  because  agents  of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

69.     Defendant's  conduct,  as  alleged  herein,  violated  Title  VII  which makes  it  unlawful  to  harass  or  retaliate  against  an  employee  for  engaging  in protected activity.

70.     Plaintiff  engaged  in  protected  activity,  as  more  fully  laid  out  in  the statement of facts, including, but not limited to when Plaintiff attempted to report the behavior she experienced in the months leading up to her termination.

71.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected  behavior  because  she  reported  the  issue  directly  to  multiple  agents  of Defendant.

72.     After  Plaintiff  engaged  in  protected  activity,  Defendant's  agents thereafter  took  adverse  employment  actions  against  Plaintiff,  as  alleged  in  the statement of facts, and terminated her position.

73.     Defendant  and  its  agents'  unlawful  actions  were  intentional,  willful, malicious and/or done with reckless disregard of Plaintiff's rights.

74.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

75.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

76.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

77.     Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT IV**</u>
**RETALIATION IN VIOLATION OF THE ELCRA**

78.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

79.     At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

80.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

81.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

82.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff attempted to report the behavior she experienced in the months leading up to her termination.

12

83.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

84.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included terminating her.

85.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

86.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

87.    As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

88.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

89.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

90.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

91.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

92.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

93.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to Title VII.

94.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, including but not limited to, terminating her such other actions as described in the facts above.

95.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

96.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

97.     As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

98.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

99.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

100.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

101.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

102.    Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

103.    Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

104.    Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, including but not limited to, terminating her and the only other African-American employee actions as described in the facts above.

105.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

15

106.   The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

107.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

108.   Plaintiff requests relief as described in the Prayer for Relief below

<u>**COUNT VII**</u>
<u>**DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA")**</u>

109.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

110.   At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the ADEA.

111.   A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct her daily work activities, as alleged in the statement of facts.

16

112.   Defendant's conduct, as alleged herein, violated the ADEA, which makes it unlawful to "discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age."

113.   Plaintiff was over forty-five years old at all times relevant to this complaint, and as a result, is a member of a protected class for the purposes of the ADEA.

114.   Plaintiff was being systematically targeted and terminated.

115.   As a direct and proximate result of the Defendant's wrongful acts and omissions,

116.   Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

117.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

118.   Plaintiff requests relief as described in the Prayer for Relief below.

<u>COUNT VIII</u>
**HARASSMENT AND DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101, et seq. ("ELCRA")**

119.    Plaintiff incorporates by reference all allegations in the proceeding

paragraphs.

120.   At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the ELCRA.

121.   A respondeat superior relationship existed because Agents of Defendant Employer had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

122.   Defendants Employer's conduct, as alleged in the statement of facts, violated the ELCRA, which makes it unlawful to harass and/or discriminate against an employee on the basis of their age.

123.   As alleged in the statement of facts, Plaintiff would consistently receive harassment or differential treatment on the basis of her age.

124.   Plaintiff was over forty-five years old at the time of her termination meaning she is within the protected class as the ELCRA does not limit age discrimination to the elderly class, but instead, makes all age discrimination illegal, and as a result, Plaintiff is a member of a protected class.

125.   Plaintiff was talked down to, belittled, failed to be promoted, treated with much more hostility than any of her co-workers specifically because of her age, and other such conduct as alleged herein.

126.   As a direct and proximate result of the Defendants' agents' wrongful

acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

127.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

128.   Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

PLAINTIFF, Crystal Hall, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  January 25, 2024                  Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
Austen Shearouse (P69530)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
*Attorneys for Plaintiff*

19